UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARINDER KAUR<br><br>Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>Defendant. | No. 2:18-cv-00933-AC<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383f.[1] For the reasons that follow, the court will deny plaintiff's motion for summary judgment, and grant the Commissioner's cross-motion for summary judgment.

---

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability. 42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986). SSI is paid to financially needy disabled persons. 42 U.S.C. § 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 *et seq.*, is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels . . .").
(continued…)

1

## I. PROCEDURAL BACKGROUND

Plaintiff applied for DIB and SSI on August 14, 2013. Administrative Record ("AR") 287-99.[2] The disability onset date for both applications was alleged to be October 25, 2011. AR 287, 291. The applications were disapproved initially and on reconsideration. AR 148-52, 158-63. Two hearings were held before ALJ Lawrence J. Duran on October 14, 2016 and on January 5, 2017. AR 37-89 (transcripts). Plaintiff, representing herself, was present and testified at both hearings with the assistance of a Punjabi interpreter. A medical expert and a vocational expert also testified at the hearings.

On February 9, 2017, the ALJ issued an unfavorable decision, finding plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 21-31. On February 16, 2018, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-6.

Plaintiff filed this action on April 16, 2018. ECF No. 1; see 42 U.S.C. §§ 405(g), 1383(c)(3). The parties consented to the jurisdiction of the magistrate judge. ECF Nos. 10, 20. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 17 (plaintiff's summary judgment motion), 21 (Commissioner's summary judgment motion), 26 (plaintiff's reply brief).

## II. FACTUAL BACKGROUND

Plaintiff was born in 1968, and accordingly was 43 years old on the alleged disability onset date, making her a "younger person" under the regulations. AR 287; see 20 C.F.R §§ 404.1563(c), 416.963(c) (same). Plaintiff has a high school education, and can read and speak some English. AR 56, 317.

////

////

////

---

[2] The AR is electronically filed at ECF Nos. 13.3 to 13.10 (AR 1 to 509).

## III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . .'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## IV. RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 423(a)(1)(E) (DIB), 1381a (SSI). Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . . .'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b) and 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id., §§ 404.1520(a)(4)(ii), (c) and 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id., §§ 404.1520(a)(4)(iii), (d) and 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id., §§ 404.1520(a)(4)(iv), (e), (f) and 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id., §§ 404.1520(a)(4)(v), (g) and 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V. THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.
>
> 2. [Step 1] The claimant has not engaged in substantial gainful activity since October 25, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. [Step 2] The claimant has the following severe impairments: status post L4-L5 laminectomy, partial facetectomy, and foraminotomy, prosthetic right eye, depressive disorder, and anxiety (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. [RFC] After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), specifically as follows: the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; she can stand and/or walk for 6 hours out of an 8-hour workday with regular breaks; she can sit for 6 hours out of an 8-hour workday with regular breaks; she can occasionally climb stairs, stoop to knee level, kneel, crouch, and crawl; she cannot climb ladders, ropes, or scaffolds; she cannot perform fast-paced work; she cannot concentrate intensely for more than an hour without a 5-minute change in focus; she cannot view objects moving from right to left; and she may be absent or off task 5 percent of the time due to pain and depression.
>
> *////*

> 6. [Step 4] The claimant is capable of performing past relevant work as a cleaner and hand packager. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from October 25, 2011, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

AR 23-31.

As noted, the ALJ concluded that plaintiff was "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 31.

## VI. ANALYSIS

Plaintiff argues that the ALJ (1) erred in finding her headaches/migraines non-severe at Step Two, (2) determined a physical residual functional capacity ("RFC") that was not supported by the record, (3) determined a psychological RFC that was not supported by the record, and (4) improperly discounted the testimony of plaintiff and her brother. ECF No. 17 at 7-14.

### A. Any Error at Step Two Was Harmless

Plaintiff argues that the ALJ should have found her migraine headaches an additional severe impairment at Step Two of the analysis. "Step two is merely a threshold determination meant to screen out weak claims." Buck v. Berryhill, 869 F.3d 1040, 1048 (9th Cir. 2017) (citing Bowen v. Yuckert, 482 U.S. 137, 146–47 (1987). Once a claimant prevails at Step Two, by achieving a finding of some severe impairment, regardless of which condition is found to be severe, the ALJ proceeds with the sequential evaluation, considering at each step all other alleged impairments and symptoms that may impact the claimant's ability to work. See 42 U.S.C. § 423(d)(2)(B); Buck, 869 F.3d at 1049 ("The RFC . . . should be exactly the same regardless of whether certain impairments are considered 'severe' or not."). Thus, when an ALJ finds at least one severe impairment and proceeds to consider evidence of limitations posed by all of a claimant's impairments at Step Four, there is no reversible error for a failure to find additional severe impairments at Step Two. See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007); see also Buck, 869 F.3d at 1049 (where Step Two was decided in plaintiff's favor, he could not have

6

been prejudiced and any error was therefore harmless).

Here, the ALJ decided Step Two in plaintiff's favor, finding that plaintiff had severe impairments of status post L4-L5 laminectomy, partial facetectomy, and foraminotomy; prosthetic right eye; depressive disorder; and anxiety. AR 23. However, he found that because plaintiff's headaches caused only a slight abnormality that would have no more than a minimal effect on her ability to work, it was non-severe. AR 23-24; see 20 C.F.R. §§ 404.1522 ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."), 416.922 (same). In making this finding, the ALJ noted plaintiff's repeated complaints of headaches and the lack of positive signs in plaintiff's brain CT and neurological examination. AR 24. Plaintiff argues that few people with headaches will have abnormal CT scans, and that the ALJ's reasoning is flawed.

However, the court finds that any error by the ALJ at Step Two was harmless. Step Two was resolved in plaintiff's favor with a finding of several other severe impairments, and the ALJ proceeded to Steps Three and Four of the disability analysis, ultimately determining that plaintiff could perform light work with certain limitations. AR 24-30. In discussing the evidence supporting the RFC determination, the ALJ discussed plaintiff's testimony regarding her headaches and the State agency medical consultant's opinion that plaintiff's migraines were non-severe. AR 26, 28. The ALJ stated that the record revealed that claimant's migraines did not have more than a minimal effect on her ability to work because the record reflected no diagnostic or neurological evidence of migraines. AR 28. The ALJ thus considered plaintiff's migraine headaches throughout the disability analysis, despite finding it non-severe. Accordingly, any error at Step Two was harmless. See Lewis, 498 F.3d at 911.

B. The ALJ Did Not Err in Determining Plaintiff's Physical RFC

In challenging the ALJ's physical RFC determination that plaintiff could perform light work with certain additional limitations, plaintiff asserts several arguments. First, plaintiff argues that the ALJ improperly rejected the opinion of her treating physician, Dr. Venugopal Bellum. Second, she contends that the ALJ failed to develop the record, assigning a physical RFC without sufficient opinion evidence or raw medical evidence. Relatedly, she also argues that the case

7

should be remanded for consideration of a second opinion statement that Dr. Bellum provided after the ALJ issued his decision. ECF No. 17 at 8-11.

*i. The ALJ Properly Rejected Dr. Bellum's First Opinion Statement*

The only opinion evidence from Dr. Bellum that was before the ALJ was an October 28, 2016 letter, the substance of which merely stated:

> Ms. Kaur has been my patient for over a year. She has chronic back pain and is s/p back surgery. She has chronic depression and chronic insomnia. She is on medications.
>
> Due to her above conditions she is unable to be gainfully employed.

AR 507.

The ALJ found that Dr. Bellum's conclusion regarding plaintiff's inability to work "ha[d] no probative value" and therefore "reject[ed] it." AR 29. The ALJ reasoned that (1) as an opinion on an issue reserved to the Commissioner, the statement was not entitled to controlling weight and was not given special significance; and (2) the opinion was not supported by objective evidence and was inconsistent with the record as a whole. Id.

By addressing this opinion evidence and explaining his reasons for discounting it, the ALJ satisfied his legal obligation under the regulations. As an opinion limited to the ultimate disability determination, Dr. Bellum's statement was not entitled to any special weight. 20 C.F.R. 416.927(e); see Tonapetyan v. Halter, 242 F.3d 1144, 1148-49 (9th Cir. 2001) (noting that an ALJ is not bound by the opinion of a treating physician with respect to the ultimate determination of disability). Dr. Bellum's letter contained no medical opinions regarding plaintiff's specific functional limitations, and so did not create any contradiction between himself and the reviewing physicians' opinion that would have required additional justification for the ALJ to reject it.

*ii. The ALJ Fulfilled His Duty to Develop the Record*

Plaintiff argues that the ALJ failed to develop the record in general, noting the dearth of medical opinion evidence and treatment records. "The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citation and quotation marks omitted). When the claimant is unrepresented, "the ALJ must be especially

diligent in exploring for all the relevant facts." Id.; see Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003) ("When a claimant is not represented by counsel, this responsibility [to fully and fairly develop the record] is heightened."). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." Id. (citation and quotation marks omitted); see Mayes v. Massanari, 276 F.3d 453, 459–60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."). However, "[a] specific finding of ambiguity or inadequacy of the record is not necessary to trigger this duty to inquire, where the record establishes ambiguity or inadequacy." McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011) (as amended). "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." Tonapetyan, 242 F.3d at 1150.

Plaintiff was not represented by counsel at the administrative level until after the ALJ had rendered his decision. AR 17. In addition, plaintiff only spoke some English and testified at her hearings with the assistance of a Punjabi interpreter. Thus, the ALJ was certainly under a "heightened" obligation to ensure that plaintiff's interests were considered under a fully developed record. See Celaya, 332 F.3d at 1183. The administrative record, indeed, contains a fairly small number of medical records. However, the court concludes that the ALJ adequately discharged any duty to develop the record in this case.

At plaintiff's first hearing on October 14, 2016, the ALJ stopped the proceeding after discovering the lack of medical records related to plaintiff's arm and back problems. The ALJ instructed plaintiff to have her physicians fax in their records, and he sent plaintiff and her interpreter to the reception desk to find out all the medical records that needed to be obtained. AR 56-57. The ALJ informed plaintiff that she should "tell them about any treating doctors you had, any pain management doctor you had, any psychiatric or psychological doctor you had" and continued the hearing. AR 57. At the continued hearing on January 7, 2017, the ALJ

acknowledged receipt of additional records from several providers, and plaintiff stated that she considered the record complete. AR 62. During the second hearing, plaintiff testified to experiencing arm and shoulder pain within the last few months, and at the conclusion of the hearing, the ALJ held the record open for 14 days to receive medical records supporting those allegations. AR 87-88. Plaintiff stated that she was only receiving medication but had not undergone any imaging for those injuries, and the ALJ replied that at least she could provide the doctors' notes regarding a diagnosis. AR 88.

In this case, the ALJ utilized two methods of developing the record explicitly approved by the Ninth Circuit. See Tonapetyan, 242 F.3d at 1150 (stating that an ALJ may discharge his duty to develop the record by, inter alia, "continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record"). Plaintiff had nearly four months between her hearings to supplement the record and in that time successfully submitted 27 more pages of medical records, beyond the 68 pages initially submitted. AR 481-507. Having carefully examined the hearing transcripts, the undersigned finds that, despite any language barrier, plaintiff understood the ALJ's repeated instructions to provide further medical records. To the extent the ALJ's duty to develop the record was triggered, he successfully discharged that duty.

> iii.  *Remand Is Not Warranted for Consideration of Dr. Bellum's Second Opinion*

After the ALJ issued his decision, and having retained counsel, plaintiff submitted to the Appeals Council a second opinion statement by her treating physician Dr. Bellum. AR 10. Dr. Bellum's May 19, 2017 letter states:

> The purpose of this letter is to document Ms. Kaur's health condition.
>
> I have been her primary care physician for over a year. She is suffering from chronic pain syndrome/fibromyalgia. She also underwent a lumbar spine surgery recently.
>
> She has been prescribed multiple medications but she did not want to take either due to fear of side effects with some and not responding to some meds.
>
> I have encouraged her to stay active and do regular physical activities for better quality of life. She I believe is unable to sustain any employment due to chronic pain.

AR 11.

The Appeals Council acknowledged receipt of this additional evidence, but it did not consider and exhibit Dr. Bellum's letter, finding that it did not show a reasonable probability that it would change the outcome of the decision. AR 2. Even assuming this letter is proper for consideration here, the court fails to see how it provides any more of an opinion than was provided in Dr. Bellum's first letter. Remand is unwarranted on this basis.

### C. The ALJ Did Not Err in Determining Plaintiff's Psychological RFC

Plaintiff argues that the ALJ improperly weighed the opinions of consultative examiners Dr. Michelina Regazzi and Dr. Ko Fang in assigning her psychological RFC. In June 2013, Dr. Fang conducted a mental status examination, observing that plaintiff's memory was "fair" as evidenced by minor difficulty remembering dates of significant life events and problems recalling items during one test; she presented with a "depressed mood, and a flat affect"; and she "made fair eye contact." AR 416. Dr. Fang diagnosed plaintiff with Depressive Disorder and Generalized Anxiety Disorder. Id. Dr. Fang found that plaintiff's "mental health problems impair[] her concentration, memory and cognitive functioning"; that her long-term and short-term memory was "moderately impaired"; and that she "does not have the mental ability to understand and remember meaningful information." AR 417. In conclusion, Dr. Fang opined that plaintiff's psychiatric symptoms "seem to impede her general ability to perform tasks, manage daily responsibility, and to care for her general well-being"; and that "[h]er poor social skills [and] impaired judgment . . . will impede her ability to interact with others and the public such as supervisor[s] and co-workers." AR 418.

A few months later, in December 2013, Dr. Regazzi performed a mental status examination. She observed, as relevant, that plaintiff's eye contact was good; that her intelligence was "[i]ntact"; that her attention was fair, as she was able to do reverse serial three's but made two mistakes; that her concentration was within normal limits, as she was able to carry out a simple three-step command; that her memory was good, as she recalled three out of three words immediately, and three out of three after a brief delay; and that her judgment was adequate. AR 435-36. Dr. Regazzi also diagnosed plaintiff with Depressive Disorder. AR 436. Regarding plaintiff's work-related abilities, Dr. Regazzi found plaintiff "moderately impaired" in her ability

11

to complete a normal workday or workweek and in dealing with the usual stresses encountered in a competitive work environment; and otherwise found plaintiff "not significantly limited" in her ability to perform simple as well as detailed and complex tasks, perform work activities without special or additional supervision, accept instructions from supervisors, and interact with coworkers and the public. AR 436-37.

In his decision, the ALJ gave "significant weight" to the opinions of both Dr. Fang and Dr. Regazzi. AR 28. Noting plaintiff's mistakes with serial threes, and minor difficulty with remote and immediate memory, the ALJ found it appropriate to restrict plaintiff from performing fast paced work, to preclude her from intensely concentrating for more than an hour without a 5-minute change in focus, and to permit her to be absent or off task 5 percent of the time due to pain and depression. AR 28-29. The ALJ did not impose a limitation on social functioning, reasoning that plaintiff was able to establish good eye contact, go out alone, and shop in stores. AR 29.

Plaintiff argues that Dr. Fang effectively opined that plaintiff was disabled, while Dr. Regazzi found only moderate impairments, and therefore the ALJ improperly discounted Dr. Fang's opinions. ECF No. 17 at 12-13. While the court agrees that Dr. Fang's report suggests more pronounced limitations than Dr. Regazzi's, the vague language in Dr. Fang's report makes it difficult to tell exactly what degree of limitations he found. Contrary to plaintiff's assertion, the statements that plaintiff's psychiatric symptoms "seem to impede" her daily functioning and that her poor social skills and judgment would "impede" her ability to interact with coworkers do not necessarily amount to an opinion that plaintiff was disabled. Dr. Fang did not use the terms prescribed in the regulations for evaluating mental impairments. See 20 C.F.R. § 404.1520a (establishing five-point scale for degree of limitation in functional areas as "None, mild, moderate, marked, and extreme"). Thus, it is unclear how much of an impediment Dr. Fang found in the areas discussed. In many ways Dr. Fang's and Dr. Regazzi's reports explicitly aligned, and the ALJ reasonably could have interpreted the vague language of Dr. Fang's report as generally consistent with Dr. Regazzi's findings. See Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) (an ALJ's conclusion will be upheld when the evidence is susceptible to more than one rational interpretation).

Plaintiff also argues that the ALJ erred in declining to adopt a social functioning limitation. ECF No. 17 at 13. While the undersigned agrees that the reasons the ALJ cited directly after rejecting this limitation—good eye contact, going out alone, and shopping in stores (AR 27)—are not particularly strong, they provide sufficient support for his decision, especially in light of the ALJ's detailed consideration of Dr. Regazzi's finding that plaintiff was not significantly limited in interacting with coworkers and the public.

### D. The ALJ Did Not Err in Weighing Plaintiff's and the Witness's Testimony

Finally, in two brief paragraphs, plaintiff argues that the ALJ insufficiently justified his decision to discount plaintiff's testimony and her brother's written third-party function report. ECF No. 17 at 13-14. The court disagrees.

The ALJ did not err in his treatment of plaintiff's testimony. Evaluating the credibility of a plaintiff's subjective testimony is a two-step process: First, the ALJ must "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. . . . In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted). Objective medical evidence of the pain or fatigue itself is not required. Id. (internal citations omitted). Second, if the ALJ does not find evidence of malingering, the ALJ may only reject the claimant's testimony by offering "specific, clear and convincing reasons for doing so." Id. (internal citations omitted). While an ALJ's credibility finding must be properly supported and sufficiently specific to ensure a reviewing court the ALJ did not "arbitrarily discredit" a claimant's subjective statements, an ALJ is also not "required to believe every allegation" of disability. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). So long as substantial evidence supports an ALJ's credibility finding, a court "may not engage in second-guessing." Thomas, 278 F.3d at 958.

Here, the ALJ summarized plaintiff's testimony from the hearing and found that while her impairments could reasonably be expected to cause the alleged symptoms, her statements

13

concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the other record evidence. AR 26. First, the ALJ discounted plaintiff's statements in her function report that she had difficulty standing, walking, sitting, bending, kneeling, concentrating, understanding and following instructions because she also stated that she prepared meals, drove a car, went out alone, shopped, paid bills, and handled a savings account. Id. Next, the ALJ discounted plaintiff's statements at the hearing that she was unable to work due to back and shoulder pain, no eyesight in her right eye, migraines, and depression because of her simultaneous testimony that on a normal day she dropped off her children at school, shopped, mopped, swept, loaded the dishwasher and laundry, and read a Punjabi newspaper. Id. Finally, the ALJ reasoned that while plaintiff's laminectomy suggested that her back pain symptoms were genuine, the record reflected that the surgery was successful. Id.

The ALJ could reasonably conclude that plaintiff's daily activities undermined her claimed inability to work and discount her testimony on that basis. See Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) ("ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct"); id. at 1113 ("Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."). The ALJ did not err in discounting plaintiff's subjective testimony.

Nor did the ALJ err in his treatment of the third-party function report submitted by plaintiff's brother, Dalvir Nijjar. "An ALJ need only give germane reasons for discounting the testimony of lay witnesses." Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005). Here, the ALJ found that Mr. Nijjar's statements did not persuasively establish additional restrictions in plaintiff's RFC. AR 30. The ALJ noted that Mr. Nijjar attested that claimant had difficulty standing, walking, sitting, seeing, concentrating, and following directions; however, he also averred that plaintiff took her children to and from school, drove a car, went out alone, shopped in stores, paid bills, and handled a savings account. Id. The ALJ accurately described Mr. Nijjar's report, and the inherent contradictions between his description of plaintiff's limitations and her daily activities constitute a germane reason for discounting the report. See Lewis v. Apfel, 236

F.3d 503, 512 (9th Cir. 2001) (contradictory evidence in the record is a germane reason for rejecting lay testimony).

VII.  CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 17), is DENIED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 21), is GRANTED; and

3. The Clerk of the Court shall enter judgment for defendant, and close this case.

DATED: August 23, 2019

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE